Ray D. Hacke, OSB #173647
PACIFIC JUSTICE INSTITUTE
317 Court St. NE, Ste. 202
Salem, ORm 97301
(503) 917-4409 Phone
(916) 857-6902  Facsimile

Attorneys for Plaintiff
DANIKA GOLDSTEIN

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| DANIKA GOLDSTEIN, An Individual,<br><br>Plaintiffs,<br><br>v.<br><br>NIKE, INC., A Corporation,<br><br>Defendant | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR FAILURE TO HIRE IN VIOLATION OF TITLE VII [42 U.S.C. § 2000e-2] AND ORS 659A.030(1)(a)**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff DANIKA GOLDSTEIN hereby alleges as follows:

## **PARTIES**

1.      Plaintiff is, and at all times herein unless noted was, a senior project manager for Coldwell Banker Richard Ellis Group ("CBRE"), a global real estate services and investment firm that worked as a contractor in service to Defendant NIKE, INC. ("NIKE").  When NIKE had an opening for which Plaintiff was eminently qualified, Plaintiff applied for the position.

2.      Plaintiff also is, and at all times herein was, a practicing Jew who was unable to be vaccinated against COVID-19 for religious reasons.  Because NIKE required all employees at its headquarters in Beaverton, Oregon, to be vaccinated and Plaintiff was not vaccinated, NIKE refused to hire Plaintiff.

3.      Defendant NIKE is, and at all times herein was, a corporation headquartered in Beaverton, Oregon, in the County of Washington.  *See* Attached **Exhibit "A"** [a true and accurate copy of NIKE's proof of registration from the Oregon Secretary of State's website].  NIKE is, and at all times herein was, an employer within the definition of 42 U.S.C. § 2000e(b).

## JURISDICTION

4.      Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

5.      This Court has jurisdiction over Defendant NIKE pursuant to 28 U.S.C. § 1331 because Plaintiff's action arises under the laws of the United States.

6.      This Court has supplemental jurisdiction over the state law claim(s) asserted herein pursuant to 28 U.S.C. § 1367(a) in that such claim(s) are related to and form part of the same case and controversy as Plaintiff's federal claim(s).

## VENUE

7.      Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

8.      Venue is proper in the Court's Portland Division because Defendant NIKE is headquartered in the County of Washington, the events giving rise to this Complaint occurred in County of Washington, and all agents, employees, or other persons working for, or in concert with, NIKE with regard to the events giving rise to this case are located in, employed in, and/or residents of County of Washington.

## GENERAL ALLEGATIONS

9.      Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

10.     The COVID-19 pandemic effectively began in the State of Oregon on March 20, 2020.  At that time, Plaintiff was working for Pro Unlimited.

11.    On March 28, 2021, Plaintiff was hired as a Senior Project Manager for Brand Workplace Design & Connectivity with CBRE.  Plaintiff remains employed by CBRE to this day.

12.    Throughout her tenure with both Pro Unlimited and CBRE – including the entirety of the COVID-19 pandemic – Plaintiff worked in the offices at NIKE's headquarters in Beaverton, Oregon, in the County of Washington.

13.    When the COVID-19 pandemic began in March 2020, NIKE sent most of its employees and contractors home from its headquarters to work remotely.  That was not the case for Plaintiff, who was part of NIKE's COVID policy rollout team: Plaintiff was responsible for the installation of COVID-related signage and workplace behavior messaging over the course of the ensuing year.  Plaintiff installed direction arrows on the floors of NIKE's offices, plexiglass screens to keep workers sitting in close proximity to one another from transmitting or contracting COVID-19, and temperature-checking machines.

14.    COVID-19 vaccines became available to the general public in Oregon in late 2020 or early 2021.

15.    Plaintiff, a practicing Jew, holds sincere religious beliefs that prohibit her from taking potentially harmful substances into her body.  *See* Attached **Exhibit "B"** [a true and accurate copy of the first religious accommodation request that Plaintiff submitted to NIKE when seeking employment there].  Plaintiff sincerely believes that "[m]y G-d given body and mind are used to both connect to G-d but also to perform mitzvot" – that is, comply with commandments or precepts of Jewish law – "and repair the world." *Id.*

16.    Among the "mitzvot" that Plaintiff she believes she is required to perform are "maintenance of the body in a healthy and sound condition in a God-chosen way" and distancing herself "from things which destroy the body" and accustoming herself "in things which are helpful and life-imparting."  Ex. "B."

17.    Plaintiff believes, and at all times herein believed, that the three COVID-19 vaccines then available in the United States – manufactured by Pfizer, Moderna, and Johnson & Johnson – were all potentially harmful.  *See* Ex. "B." Plaintiff was particularly concerned that the COVID-19 vaccines "have known risks [for] potential short and long-term harm" and that "the damages produced, particularly at [t]he vascular level, are likely irreversible." *Id.* (cleaned up).

18.    CBRE, Plaintiff's employer, generally required its employees to receive COVID-19 vaccinations.  However, CBRE was aware of Plaintiff's religious objections to COVID-19 vaccinations and allowed her to work in NIKE's offices with a religious exception, as allowed under both Title VII and ORS 659A.030(1).

19.    There came a point where NIKE knew that CBRE allowed Plaintiff to work at NIKE's offices with a religious exception.  At no point did NIKE ever ask CBRE to ensure that any of its employees who worked in NIKE's Beaverton office, including Plaintiff, were vaccinated against COVID-19.

20.    While working at NIKE's offices, Plaintiff complied with the terms of her religious exemption from CBRE's vaccination requirement, including regular COVID-19 testing, temperature checks, masking, social distancing, and weekly registration of her badge to obtain entrance to NIKE's offices.  Had NIKE hired her, Plaintiff would have continued to submit to these requirements.

21.    On September 29, 2021, NIKE announced its COVID-19 Vaccination Policy (the "Vaccination Policy" or the "Policy").  Pursuant to the Vaccination Policy, to enter any of NIKE's offices in the United States after December 1, 2021, an employee had to provide verified proof of COVID-19 vaccination.  Failure to consistently comply with the Policy would result in termination of employment.

22.    NIKE's Vaccination Policy did allow then-current and potential employees to apply for religious and/or medical exceptions.

23.     In February 2022, Plaintiff applied for NIKE's Workplace Studio Creative Manager position, for which Plaintiff was qualified.  In that role, Plaintiff would have had to report to NIKE's Beaverton office at least three times per week.

24.     NIKE invited Plaintiff to interview for the Workplace Studio Creative Manager position.  *See* Attached **Exhibit "C"** [a true and accurate copy of a screenshot of an e-mail from NIKE inviting Plaintiff to move forward in the job interview process].

25.     During the interview process, Plaintiff informed NIKE of her vaccination status as it related to her sincerely held religious beliefs.  NIKE responded by having Plaintiff submit a religious accommodation request form, which she did on April 4, 2022.  *See* Ex. "B."

26.     Despite being aware of Plaintiff's vaccination status, NIKE still offered Plaintiff the Workplace Creative Studio Manager position.

27.     In her religious accommodation request, Plaintiff extensively quoted Jewish texts and commentaries – including the Torah, Judaism's chief holy book of scriptural commands – explaining her beliefs concerning God's commands to keep her body from potential harm.  *See* Ex. "B."

28.     Among the Torah verses Plaintiff quoted was Shemot (Exodus) 20:1 and Dvarim (Deuteronomy) 5:9, which both state, "You shall have no other gods besides Me."  Ex. "B."  By this, Plaintiff meant that she is to obey God's commands and not those of a potential employer – something she indicated later in her religious accommodation request when she stated, "I am unable to allow an external entity to decide the parameters of my relationship with G-d."  *Id.*

29.     On April 19, 2022, NIKE sent Plaintiff an e-mail informing her that her religious accommodation request had been denied.  *See* Attached **Exhibit "D"** [a true and accurate copy of NIKE's denial e-mail].  The e-mail informed Plaintiff that if she did not provide to NIKE by 5 p.m. April 22, 2022, proof that she had

received the first of two COVID-19 vaccination shots, NIKE would rescind its job offer.  *Id.*

30.    Unable to receive a COVID-19 vaccine due to her sincerely held religious convictions, Plaintiff did not receive a COVID-19 vaccination shot by the April 22, 2022 deadline.

31.    Even so, NIKE remained in touch with Plaintiff, seemingly still interested in adding her to its team.  *See* Attached **Exhibit "E"** [a true and accurate copy of a series of text messages exchanged between Plaintiff and NIKE showing that NIKE remained in communication with Plaintiff even after the April 22, 2022 deadline came and went].

32.    On May 6, 2022, Plaintiff submitted to NIKE a second religious accommodation request in the hopes of convincing NIKE to reconsider its stance on requiring her to be vaccinated.  *See* Attached **Exhibit "F"** [a true and accurate copy of Plaintiff's second religious accommodation request].

33.    In her second religious accommodation request, Plaintiff reaffirmed the beliefs articulated in her first religious accommodation request, declaring that "[f]aith in G-d and living actions in devotion and acknowledgement to G-d prevents me from injecting my body with the currently available covid (sic) products as that would violate instruction from G-d and my religion based on the formulation of the vaccine."  *See* Ex. "F."  Plaintiff further stated that "I fear the eternal consequences of defying G-d and [not] safeguarding my body as communicated within the halachic law to protect life."  *Id.*  In addition, Plaintiff stated, "I have already had the covid (sic) virus at least twice and G-d has restored my health," thereby indicating that she trusted in God, not COVID-19 vaccines, to protect her from COVID-19.  *Id.*

34.    On May 17, 2022, NIKE denied Plaintiff's second religious accommodation request.  *See* Attached **Exhibit "G"** [a true and accurate copy of

_____
Complaint
6

NIKE's second denial e-mail].  NIKE also informed Plaintiff on that date that if she did not provide to NIKE by 5 p.m. on May 19, 2022 proof that she had begun the COVID-19 vaccination process, NIKE would rescind its job offer.  *Id.*

35.    Unable to receive a COVID-19 vaccine in accordance with her sincerely held religious beliefs, Plaintiff did not begin the vaccination process.

36.    Because Plaintiff did not begin the vaccination process by the May 19, 2022 deadline, NIKE rescinded its job offer to Plaintiff, ultimately offering the job to someone else.

37.    After NIKE rescinded its job offer, Plaintiff continued to work at NIKE's headquarters in Beaverton.  In fact, Plaintiff was part of the team that re-opened NIKE's campus for returning employees when NIKE brought its employees back to campus in September 2022, when NIKE removed the COVID-19 vaccination requirement for current and potential employees.

38.    Still employed by CBRE, Plaintiff continues to work in the same buildings on NIKE's Beaverton campus.  Even after rescinding its job offer, NIKE never saw fit to have Plaintiff stop working in its buildings – a strong indicator that it would not have caused NIKE any undue hardship to allow Plaintiff to continue working there as a NIKE employee rather than a contractor.

39.    Plaintiff has suffered economic damages in the form of having her career trajectory severely limited by NIKE.

40.    Plaintiff has also suffered the following noneconomic damages proximately caused by NIKE's refusal to hire her:

  a. Loss of sleep

  b. Deep angst

  c. Humiliation from having been discriminated against, especially having to relive the experience when asked about it by co-workers

  d. Mental and emotional distress from loss of career advancement

41.     As a condition of filing the herein lawsuit, Plaintiff has obtained a right-to-sue letter from the Equal Employment Opportunity Commission.  That letter is attached hereto as **Exhibit "H."**

42.     Attached hereto as **Exhibit "I"** is a printout from the website TimeandDate.com showing when the 90-day statute of limitations set forth in each right-to-sue letter is set to expire.  Plaintiff included this printout to show that she timely filed this lawsuit in compliance with the deadline set forth in her letter.

<div align="center">

**FIRST CAUSE OF ACTION:**
**Violation of Title VII – Failure to Hire/Accommodate Religion**
**Against Defendant NIKE**
**[42 U.S.C. § 2000e-2]**

</div>

43.     Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

44.     Title VII of the 1964 Civil Rights Act prohibits employers from refusing to hire applicants for employment on the basis of the applicants' religion. 42 U.S.C. § 2000e-2(a)(1).

45.     For purposes of Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year …"  42 U.S.C. § 2000e(b).

46.     Defendant NIKE qualifies as an employer under Title VII.

47.     The term "religion," for purposes of Title VII, "includes all aspects of religious observance and practice, as well as belief …" 42 U.S.C. § 2000e(j).

48.     Failing or refusing to hire a potential employee because of the employee's religion "is synonymous with refusing to accommodate the religious practice." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772 fn. 2 (2015) (*Abercrombie & Fitch*).

49.     As a practicing Jew, Plaintiff belongs to a class of persons protected under Title VII.  42 U.S.C. § 2000e-2(a)(1).

50.     Plaintiff has a bona fide religious belief that she cannot defile her body by taking into it potentially harmful substances.  *See* Exs. "B" and "F."

51.     Plaintiff's bona fide religious belief conflicted with her employment-related duty to receive a COVID-19 vaccine.  *See* Exs. "B" and "F."

52.     Plaintiff informed her employer, Defendant NIKE, of the conflict between her religious beliefs concerning and her employment-related duty to receive a COVID-19 vaccine during the interview process for NIKE's Workshop Studio Creative Manager position.  *See* Exs. "B" and "F."

53.     Defendant NIKE responded to Plaintiff's requests for a religious accommodation by refusing to hire her and demanding that she receive a COVID-19 vaccine under penalty of having her job offer rescinded.  *See* Exs. "D" and "G."

54.     Defendant NIKE made no attempt to accommodate Plaintiff's sincerely held religious beliefs, nor did NIKE assert to Plaintiff that NIKE would incur undue hardship by accommodating her beliefs.  NIKE simply punished Plaintiff for refusing to receive a COVID-19 vaccine on religious grounds.

55.     Defendant NIKE offered Plaintiff no religious accommodations even though reasonable accommodations were available.  Those accommodations included regular COVID-19 testing, temperature checks, masking, social distancing, and weekly registration of her badge to obtain entrance to NIKE's offices – the very conditions under which CBRE allowed Plaintiff to work in NIKE's buildings.

56.     Defendant NIKE would have incurred no undue hardship by accommodating Plaintiff's religious beliefs, as she was already working in buildings on NIKE's buildings for CBRE and NIKE never demanded that Plaintiff

no longer be allowed to work at NIKE's Beaverton headquarters even after declining to offer Plaintiff the Workplace Studio Creative Manager position.

57.    Animus toward Plaintiff's sincerely held religious beliefs is truly what motivated Defendant NIKE to fire Plaintiff, any assertion NIKE might make to the contrary notwithstanding.

58.    Based on the foregoing, Defendant NIKE has unlawfully discriminated against Plaintiff in violation of Title VII.

<div align="center">

**SECOND CAUSE OF ACTION:**
**Violation of Title VII – Deprivation of Employment Opportunities**
**Against Defendant NIKE**
**[42 U.S.C. § 2000e-2]**

</div>

59.    Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

60.    Title VII prohibits employers from limiting, segregating, or classifying "applicants for employment in any way ***which would deprive or tend to deprive any individual of employment opportunities*** or otherwise affect his status as an employee, because of such individual's … religion." 42 U.S.C. § 2000e-2(a)(2) (emphasis added). The Supreme Court has called the foregoing Title VII's "disparate impact" provision. *Abercrombie & Fitch Stores, Inc.*, 575 U.S. at 771.

61.    In refusing to hire Plaintiff because of her religion – to which her unvaccinated status concerning COVID-19 was inextricably tied – Defendant NIKE deprived Plaintiff of a much-desired employment opportunity for which she was qualified, thereby limiting Plaintiff's ability to advance in her career.

62.    Defendant NIKE's practice of refusing to hire potential employees who were not vaccinated against COVID-19 caused a significant discriminatory impact on potential employees like – and including – Plaintiff, who were unable to receive COVID-19 vaccines on religious grounds.

63.    Defendant NIKE's practice of refusing to hire potential employees was not consistent with business necessity, as even after becoming aware of Plaintiff's unvaccinated status and religious beliefs through the interview process for the Workplace Studio Creative Manager job, NIKE still allowed Plaintiff to work on NIKE's Beaverton campus as an employee of CBRE.

64.    Defendant NIKE could have adopted an available alternative practice that would have had less disparate impact on religious practitioners and still served NIKE's legitimate needs – namely, allowing Plaintiff to continue submitting to regular COVID-19 testing, temperature checks, masking, social distancing, and weekly registration of her badge to obtain entrance to NIKE's offices – the very conditions under which CBRE allowed Plaintiff to work in NIKE's buildings.

65.    Defendant NIKE did not did not adopt an alternative practice that would have had less disparate impact on religious practitioners, denying Plaintiff employment ***twice*** instead.

66.    Based on the foregoing, Defendant NIKE has unlawfully discriminated against Plaintiff in violation of Title VII.

### THIRD CAUSE OF ACTION:
**Violation of State Law Prohibiting Religious Discrimination
Against Defendant NIKE
[ORS 659A.030(1)(a)]**

67.    Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

68.    Like Title VII, ORS 659A.030(1)(a) prohibits employers from discharging individuals from employment on the basis of religion.

69.    Because Oregon's state law prohibiting employers from discriminating on the basis of religion is modeled after Title VII, and because the analysis for religious discrimination claims under both statutes is identical [*see*

_____

*Hedum v. Starbucks Corp.*, 546 F. Supp. 2d 1017, 1022 (D. Or. 2008)], Plaintiff declines to restate the facts as set forth in her first and second causes of action, as those facts are already incorporated as though fully set forth herein.

70.    Under 42 U.S.C. § 2000e-7, nothing in 42 U.S.C. § 1981a(b)(3), which caps the amount of non-pecuniary and punitive damages that can be awarded to Plaintiff, "shall be deemed to exempt or relieve any person from liability, duty, penalty, or punishment provided by any present or future law of any State[.]"  In other words, an Oregon jury is free to exceed any applicable federal dollar limit in accordance with Oregon law.

71.    Under Oregon law, a jury may award up to $500,000 in noneconomic damages.  *See* ORS 31.710(1).  Oregon law defines "noneconomic damages" to include "subjective, nonmonetary losses, including but not limited to … mental suffering, emotional distress, … inconvenience and interference with normal and usual activities apart from gainful employment."  ORS 31.705(2)(b)

72.    As stated *supra*, Plaintiff has endured mental suffering and emotional distress due to NIKE's unlawful discrimination against her.

73.    ORS 659A.885(3) allows for punitive damages against employers such as Defendant NIKE who violate ORS 659A.030(1)(a).  Oregon law places no cap on punitive damages.  *See Smith v. Ethicon, Inc.*, 2022 U.S. Dist. 98543 at *2 (D. Or. June 2, 2022).

74.    Based on the foregoing, in addition to violating Title VII, Defendant NIKE has violated ORS 659A.030(1)(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant NIKE as follows:

## **ON ALL CAUSES OF ACTION:**

1.    For economic damages in an amount according to proof at trial;

2.    For non-economic damages in an amount according to proof at trial;

3.    For punitive damages in an amount according to proof at trial;

4.    For attorney's fees and costs associated with bringing and maintaining this action in accordance with the law; and

5.    For such other and further relief as the Court may deem proper.


Dated: February 6, 2024              PACIFIC JUSTICE INSTITUTE
                                     __/s/ RAY D. HACKE_____
                                     Ray D. Hacke
                                     Attorney for Plaintiff
                                     DANIKA GOLDSTEIN

# EXHIBIT "A"

**OREGON SECRETARY OF STATE**

▶ **Corporation Division**

HOME

| Business Xpress | business name search | oregon business guide |
| license directory | business registry/renewal | forms/fees | notary public |
| uniform commercial code | uniform commercial code search | documents & data services |

### Business Name Search

New Search    Printer Friendly    <div align="center">Business Entity Data</div>    **04-12-2023 12:17**

| Registry Nbr | Entity Type | Entity Status | Jurisdiction | Registry Date | Next Renewal Date | Renewal Due? |
|---|---|---|---|---|---|---|
| 087399-14 | DBC | ACT | OREGON | 09-08-1969 | 09-08-2023 | |
| **Entity Name** | NIKE, INC. | | | | | |
| **Foreign Name** | | | | | | |

New Search    Printer Friendly    <div align="center">Associated Names</div>

| Type | PPB | PRINCIPAL PLACE OF BUSINESS | | |
|---|---|---|---|---|
| Addr 1 | ONE BOWERMAN DR | | | |
| Addr 2 | | | | |
| CSZ | BEAVERTON | OR | 97005 | Country | UNITED STATES OF AMERICA |

*Please click here for general information about registered agents and service of process.*

| Type | AGT | REGISTERED AGENT | Start Date | 05-08-2018 | Resign Date | |
|---|---|---|---|---|---|---|
| Of Record | 1198907-96 | UNITED AGENT GROUP INC. | | | | |
| Addr 1 | 5708 SE 136TH AVE STE 2 | | | | | |
| Addr 2 | | | | | | |
| CSZ | PORTLAND | OR | 97236 | Country | UNITED STATES OF AMERICA |

| Type | MAL | MAILING ADDRESS | | |
|---|---|---|---|---|
| Addr 1 | CO UNITED AGENT GROUP INC | | | |
| Addr 2 | 942 WINDEMERE DR NW | | | |
| CSZ | SALEM | OR | 97304 | Country | UNITED STATES OF AMERICA |

| Type | PRE | PRESIDENT | | Resign Date | |
|---|---|---|---|---|---|
| Name | JOHN | J | DONAHOE | | |
| Addr 1 | ONE BOWERMAN DRIVE | | | | |
| Addr 2 | | | | | |
| CSZ | BEAVERTON | OR | 97005 | Country | UNITED STATES OF AMERICA |

| Type | SEC | SECRETARY | | Resign Date | |
|---|---|---|---|---|---|
| Name | MARY | IRENE | HUNTER | | |
| Addr 1 | ONE BOWERMAN DR | | | | |

| Addr 2 | | | | | | |
|--------|---------------|----|-------|--|---------|-------------------------|
| CSZ | BEAVERTON | OR | 97005 | | Country | UNITED STATES OF AMERICA |

**New Search**   **Printer Friendly**   # Name History

| Business Entity Name | Name Type | Name Status | Start Date | End Date |
|----------------------|-----------|-------------|------------|----------|
| NIKE, INC. | EN | CUR | 05-30-1978 | |
| SPORTS-TEK, INC. | EN | PRE | 09-08-1969 | 05-30-1978 |

Please read before ordering Copies.

**New Search**   **Printer Friendly**   # Summary History

| Image Available | Action | Transaction Date | Effective Date | Status | Name/Agent Change | Dissolved By |
|-----------------|--------|------------------|----------------|--------|-------------------|--------------|
| | AMNDMT TO ANNUAL RPT/INFO STATEMENT | 02-08-2023 | | FI | | |
| | AMNDMT TO ANNUAL RPT/INFO STATEMENT | 11-03-2022 | | FI | | |
| | AMENDED ANNUAL REPORT | 08-12-2022 | | FI | | |
| | AMENDED ANNUAL REPORT | 08-31-2021 | | FI | | |
| | AMENDED ANNUAL REPORT | 08-24-2020 | | FI | | |
| | AMENDED ANNUAL REPORT | 08-27-2019 | | FI | | |
| | AMENDED ANNUAL REPORT | 09-07-2018 | | FI | | |
| | CHANGE OF REGISTERED AGENT/ADDRESS | 06-28-2018 | | FI | | |
| | AMNDMT TO ANNUAL RPT/INFO STATEMENT | 05-08-2018 | | FI | Agent | |
| | CHANGE OF REGISTERED AGENT/ADDRESS | 12-14-2017 | | FI | | |
| | AMENDED ANNUAL REPORT | 09-06-2017 | | FI | | |
| | CHANGE OF REGISTERED AGENT/ADDRESS | 06-12-2017 | | FI | | |
| | AMENDED ANNUAL REPORT | 09-07-2016 | | FI | | |
| | ARTICLES OF AMENDMENT | 09-25-2015 | | FI | | |
| | ARTICLES OF AMENDMENT | 09-25-2015 | | FI | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | CHANGE OF REGISTERED AGENT/ADDRESS | 09-04-2015 | | FI | Agent | |
| | AMENDED ANNUAL REPORT | 08-26-2015 | | FI | Agent | |
| | AMENDED ANNUAL REPORT | 09-08-2014 | | FI | | |
| | AMENDED ANNUAL REPORT | 08-14-2013 | | FI | | |
| | RESTATED ARTICLES | 10-01-2012 | | FI | | |
| | AMENDED ANNUAL REPORT | 08-01-2012 | | FI | | |
| | AMENDED ANNUAL REPORT | 08-24-2011 | | FI | | |
| | CHANGE OF REGISTERED AGENT/ADDRESS | 08-04-2010 | | FI | Agent | |
| | ANNUAL REPORT PAYMENT | 07-30-2010 | 07-29-2010 | SYS | | |
| | ANNUAL REPORT PAYMENT | 08-03-2009 | 07-31-2009 | SYS | | |
| | ANNUAL REPORT PAYMENT | 07-30-2008 | 07-28-2008 | SYS | | |
| | ANNUAL REPORT PAYMENT | 07-31-2007 | 07-30-2007 | SYS | | |
| | AMNDMT TO ANNUAL RPT/INFO STATEMENT | 08-09-2006 | | FI | | |
| | ANNUAL REPORT PAYMENT | 08-09-2006 | 08-08-2006 | SYS | | |
| | ARTICLES OF AMENDMENT | 09-26-2005 | | FI | | |
| | ARTICLES OF AMENDMENT | 09-23-2005 | | FI | | |
| | AMNDMT TO ANNUAL RPT/INFO STATEMENT | 08-02-2005 | | FI | | |
| | ANNUAL REPORT PAYMENT | 08-01-2005 | 07-29-2005 | SYS | | |
| | CHANGE OF REGISTERED AGENT/ADDRESS | 03-04-2005 | | FI | Agent | |
| | ANNUAL REPORT PAYMENT | 08-02-2004 | 07-30-2004 | SYS | | |
| | AMNDMT TO ANNUAL RPT/INFO STATEMENT | 10-24-2003 | | FI | | |
| | ANNUAL REPORT PAYMENT | 10-23-2003 | 10-22-2003 | SYS | | |
| | ANNUAL REPORT | 08-01-2002 | | FI | | |
| | ANNUAL REPORT | 08-06-2001 | | FI | | |
| | AMENDED RENEWAL | 08-09-2000 | | FI | | |
| | AMENDED RENEWAL | 09-15-1999 | | FI | | |
| | STRAIGHT RENEWAL | 08-12-1998 | | FI | | |

| | | | | | |
|---|---|---|---|---|---|
| | STRAIGHT RENEWAL | 08-12-1997 | | FI | |
| | STRAIGHT RENEWAL | 10-16-1996 | | FI | |
| | NB AMENDMENT | 10-10-1995 | | FI | |
| | STRAIGHT RENEWAL | 10-09-1995 | | FI | |
| | AMENDED RENEWAL | 09-26-1994 | | FI | |
| | AMENDED RENEWAL | 10-08-1993 | | FI | |
| | STRAIGHT RENEWAL | 10-16-1992 | | FI | |
| | AMENDED RENEWAL | 09-04-1991 | | FI | |
| | CORRECTION OF ANNUAL | 11-13-1990 | | FI | |
| | AGENT/AUTH REP CHNG | 11-13-1990 | | FI | |
| | NB AMENDMENT | 09-24-1990 | | FI | |
| | AMENDED RENEWAL | 09-05-1990 | | FI | |
| | STRAIGHT RENEWAL | 08-21-1989 | | FI | |
| | AMENDED RENEWAL | 09-06-1988 | | FI | |
| | NB AMENDMENT | 10-15-1987 | | FI | |
| | STRAIGHT RENEWAL | 08-24-1987 | | FI | |
| | NB AMENDMENT | 11-05-1986 | | FI | |
| | STRAIGHT RENEWAL | 08-14-1986 | | FI | |
| | STRAIGHT RENEWAL | 09-09-1985 | | FI | |
| | AGENT/AUTH REP CHNG | 06-18-1984 | | FI | |
| | AMENDMENT | 10-03-1983 | | FI | |
| | STOCK CHANGE | 10-03-1983 | | FI | |
| | MERGER | 12-31-1981 | | FI | |
| | RESTATED ARTICLES | 11-26-1980 | | FI | |
| | AGENT CHANGE | 11-26-1979 | | FI | |
| | AGENT CHANGE | 08-28-1979 | | FI | |
| | AMENDMENT | 05-30-1978 | | FI | |
| | ENTITY NAME CHANGE | 05-30-1978 | | FI | |
| | AGENT CHANGE | 09-23-1977 | | FI | |
| | AMENDMENT | 01-14-1977 | | FI | |
| | RESTATED ARTICLES | 02-18-1970 | | FI | |
| | NEW | 09-08-1969 | | FI | |

© 2023  Oregon Secretary of State.  All Rights Reserved.

# EXHIBIT "B"

 Gmail

Danika Duren Goldstein <danikaduren@gmail.com>

---

**Confirmation - Candidate COVID-19 Vaccination Accommodation Request**
1 message

---

**Smartsheet Forms** <forms@smartsheetmail.nike.com>                    Mon, Apr 4, 2022 at 8:04 PM
To: danikaduren@gmail.com

---

          # NIKE, Inc. Human Resources

Thank you for submitting your entry. A copy is included below for your records.

Please allow 7-10 business days for an HR Agent to contact you regarding your accommodation request.

## Candidate COVID-19 Vaccination Accommodation Request

| | |
|---|---|
| **First Name** | Danika |
| **Last Name** | Duren Goldstein |
| **Email Address:** | danikaduren@gmail.com |
| **Home Street Address** | 7738 SW 51st Ave |
| **City** | Portland |
| **State** | OR |
| **Zipcode** | 97219 |
| **Phone Number** | +1 (971) 570-9800 |
| **Taleo Candidate Number** | 10158222 |
| **Work State** | Oregon |
| **What is the reason for your accommodation request?** | Religious Accommodation - Vaccine |
| **Please identify the name of your religion (if any):** | Judaism |
| **Please describe your religious belief, practice or observance and how it conflicts with being vaccinated against COVID-19:** | I am requesting the religious exemption because injection from any of the Pfizer, Moderna or J&J COVID19 products would go against my relationship with G-d and my religious beliefs.

I have a religion including beliefs that help connect me with G-d and provide support, moral training, character insight and reverence, along with a sense of belonging with the Creator. The beliefs are often informed and guided by Judaic concepts. Those beliefs do not form a general argument against vaccination, but do form the basis of my objection to the injection from the Pfizer, Moderna or J&J products currently available for Covid-19.

The primary religious principles applicable to the request for accommodation have to do with maintaining and protecting my body while taking caution in what I expose myself to that may do harm.

The below Jewish concepts as communicated by G-d through the prophets, Torah and subsequent commentary make up a large foundation of my religious beliefs. These beliefs do not make up the totality of complete direction of my religious beliefs but provide a significant foundation of my pathway towards my relationship with G-d.

A brief table of the religious concepts and their relationship to the Torah and my Judaic practice are listed below: |

Primary principle of maintaining, protecting your body and taking caution in what you expose yourself to that may do harm.

Mishneh Torah, Human Dispositions 4:1
Seeing that the maintenance of the body in a healthy and sound condition is a God-chosen way, for, lo, it is impossible that one should understand or know aught of the divine knowledge concerning the Creator when he is sick, Maintenance of the body is important
Mishneh Torah, Human Dispositions 4:1
it is necessary for man to distance himself from things which destroy the body, and accustom himself in things which are healthful and life-imparting. Distance yourself from things that may harm
Shulchan Arukh, Yoreh De'ah 116:1
Exposed beverages were forbidden by the rabbis because they feared that snakes would have drunk from them, and left behind venom. Caution in exposure that may do harm
Dvarim 4:9
Guard yourself and guard your soul very much

Yalkut, Sifsei Chachomim Chumash, Metsudah Publications, 2009
Guard Yourself means look after your physical body. Guard against physical harm
Maimonides, Mishneh Torah, Hilchot Deot 4:1
Distance oneself from things that might damage one's body, and accustom oneself to a healthy lifestyle Distance yourself from things that may harm
Sefer HaChinuch, Mitzva 546, of putting a fence on one's roof
Sefer HaChinuch (Spain, 13th century), it is our responsibility to guard against natural occurrences which may harm our bodies – not only things that can end a person's life but also things that can damage a person's body. Distance yourself from things that may harm
Shemot 20:1 & Dvarim 5:6
You shall have no other gods beside Me.

Rashbam on Dvarim suggests that the prohibition is not intended to suggest that Jews would consider such man made objects as being diving but rather they might be used as a form of establishing contact as opposed to a direct route

Bereshit 32:29
Jacob wrestling with an angel

Shemot 7:1
See I place you in the role of God to Pharaoh..
Daat Zkenim
Pharaoh had determined himself to be god of the Nile.
Nothing should act as an intermediary between a direct connection with G-d and no angel or leader should stand in the way of that direct connect either.
Proverbs 31:8-9
Speak up for those who cannot speak for themselves, for the rights of all who are destitute. Speak up and judge fairly; defend the rights o the poor and needy.

**When did you first begin to embrace the religious belief, practice or observance identified above (mm/dd/yyyy)**

02/28/1982

**Have you ever been immunized or vaccinated against any disease, virus, etc., including but not limited to the Flu, Hepatitis A, Hepatitis B, Human Papillomavirus (HPV), Measles, Mumps, Rubella,**

Yes

Gmail - Confirmation - Candidate Covid-19 Vaccination Accommodation Request

2/5/23, 7:43 AM

**Shingles, or Varicella?**

**If yes, please describe why your religious belief, practice or observance conflicts with being vaccinated against COVID-19, but did not conflict with receiving other immunizations or vaccines.**

I have a religion including beliefs that help connect me with G-d and provide support, moral training, character insight and reverence, along with a sense of belonging with the Creator. The beliefs are often informed and guided by Judaic concepts. Those beliefs do not form a general argument against vaccination, but do form the basis of my objection to the injection from the Pfizer, Moderna or J&J products currently available for Covid-19.

The primary religious principles applicable to the request for exemption have to do with maintaining and protection my body while taking caution in what I expose myself to that may do harm. In addition, I am obliged to guard myself against harm. My G-d given body and mind are used to both connect to G-d but also to perform mitzvot and repair the world.

The current covid vaccines have known risks, short and potential long term harm and several unknowns regarding safety where more research is needed, and my personal risk and exposure level does not warrant harm as deemed by my spiritual practice. The damages produced, particularly at the vascular level are likely irreversible. I am unable to allow an external entity to decide the parameters of my relationship with G-d and to have someone else make this significant decision for me. I am obliged, through sincere effort and review, to make this decision and not to allow any entity to supersede my relationship as if to put themselves before my relationship with G-d. More specifically the coercion applied to this medical treatment and supporting application of this coercion goes against myself as an individual but also what I believe is ethical for a society as part of a core issue of right and wrong and has significant downstream implications which are consequentially morally objectionable.

I am unable to allow an external entity to decide the parameters of my relationship with G-d and to have someone else make this significant decision for me, I am obliged to through sincere effort and review make this decision and not allow any entity to supersede my relationship with G-d and decide this significant decision for me. To make light of that process would be to go against my religious principles that guide my connection to my creator.

Over the course of the pandemic, I have been working for Nike through a vendor relationship with a religious accommodation in place, and have caused no extra hardship during that time. I have also been infected with covid-19 at least once over that time, and have prior immunity through that exposure, which factor into my calculated risk and further desire to do no harm.

It is my sincere hope that you will recognize and accommodate my religious beliefs and allow for an alternative. I truly love my job, am a dedicated and hardworking employee and am willing to discuss creative alternatives to create an alternative strategy that does not invoke injection by the aforementioned products, violating my religious beliefs, nor create undue distress for myself or my employer.

Additional information regarding applicable research or religious practice is available upon request.

**Does the religious belief, practice or observe identified above allow you to comply with other COVID-19 safety protocols, including social distancing, wearing a face covering, and being tested for COVID-19?**

Yes

**I further certify that above information to be true and accurate and I sincerely hold the religious belief, practice or observance described above. I also understand that falsification of this document and misrepresentation of my religious belief, practice or**



**observance may be considered a violation of NIKE policy, including its Conduct Standards, and result in corrective action, up to and including termination of employment.**

## File Attachments

 **Nike Accommodation_4.22.pdf**  (99k)

Powered by Smartsheet Forms
© 2022 Smartsheet Inc. | Contact | Privacy Policy | User Agreement | Report Abuse/Spam

# EXHIBIT "C"

# Request for <mark>Nike</mark> Workplace Creative Studio Manager interview ▸ Inbox ×

 

**Human Resources** <human_resources@invalidemail.com>

to me ▾

Thu, Mar 24, 2022, 10:08 AM

 

Dear Danika:

Thank you for the time you've put into applying to the Workplace Creative Studio Manager role. We invite you to move forward in the process and interview with the team! Our Coordination team has been informed and will contact you within the next three business days. If you don't hear from them within three business days, please follow up with me directly.

Best,
Bryan Hamilton
Talent Acquisition <mark>NIKE</mark>, Inc.

**One attachment** • Scanned by Gmail ⓘ



this_message_in_...

---

**Danika Duren Goldstein** <danikaduren@gmail.com>

to Bryan.Hamilton ▾

Thu, Mar 24, 2022, 2:12 PM

Hi Bryan,

Thank you for this wonderful news! I couldn't be more excited to learn next steps.

Warmly,
Danika



# EXHIBIT "D"

# Denial of Religious Accommodation Request (COVID-19 Vaccination Policy)



 Inbox ×

**USAccommodations** <US.Accommodations@nike.com>     Tue, Apr 19, 2022, 7:51 AM      

to me ▾

Dear Danika,

Nike, Inc. has reviewed your request for an exception to our COVID-19 Vaccination Policy as an accommodation of your religious belief. The information provided by you did not establish you hold a religious belief, practice or observance that would prevent you from complying with the Policy's requirement be fully vaccinated against COVID-19. For this reason we are denying your request for religious accommodation. I want to assure you that the information you submitted was considered carefully and we did not make this decision lightly. This ends the review process for this request.

There is no appeal process for the denial of an accommodation request.  You may apply again for an accommodation where you can identify your sincere held religious belief that is in conflict with the requirement to be vaccinated that was not expressed or otherwise included in your first request.  Said differently, it cannot be a restatement of your original request.

<u>What Happens Now</u>?

We ask you to comply with the COVID-19 Vaccination Policy in a timely manner by doing the following:

- Before 5:00 PM PT on April 22, 2022, you must notify <u>US.Accommodations@nike.com</u> that you have received your first shot of an approved COVID-19 vaccine. You must also enter your second shot (if applicable) by May 22, 2022.

If you do not take any of the above steps by April 22, 2022, your offer will be rescinded.  Failure to timely enter your second shot (if applicable) will also result in termination, with an effective date to be identified by NIKE in its sole discretion.

For any additional questions, please contact NIKE Accommodations at <u>US.Accommodations@nike.com</u>.

Sincerely,

Nike Accommodations
**HR Total Rewards Operations**

 



NIKE, Inc. Human Resources

NIKE HR

# EXHIBIT "E"



Monday, Apr 4 • 8:07 PM

I have completed this step :)

Thursday, Apr 7 • 10:11 AM

**B** Hey! Just checking in with you. I'm expecting a note this week but haven't heard anything yet from the accommodation team.

Thank you, Bryan. I won't lie, it's a bit nerve wracking and I appreciate you checking in. Thank you!!

Tuesday, Apr 12 • 1:40 PM

Hi Bryan, it's Danika regarding the Creative Studio Manager role. Hoping to not be a pest, but wanted to check in and keep expressing my interest.

Tuesday, Apr 12 • 3:25 PM

**B** Hey! I messaged the team again trying to get the accommodation reviewed. As soon as I get the decision we can move forward. The position is yours, just need to make sure they give us the accommodation

Tuesday, Apr 12 • 6:50 PM

Okay, thanks!

Friday, Apr 15 • 12:16 PM

Hi Bryan, just checking in before the weekend. I'm guessing there are no updates but wanted to connect before everyone headed out for the holiday weekend.

Friday, Apr 15 • 1:49 PM

**B** I've called, text, and emailed because they told me they would let me know today. As soon as I hear I'll call you

Thank you!

Friday, Apr 15 • 4:48 PM

**B** I'm waiting to hear from the team. Hopefully they connect today still

Thanks Bryan. Friday at Nike seems like a fading hope :)

**B** I just called him and he said the team will email you the results today but can't tell me directly due to hipaa.



I'll call you

Thank you!

Friday, Apr 15 • 4:48 PM

I'm waiting to hear from the team. Hopefully they connect today still

Thanks Bryan. Friday at Nike seems like a fading hope :)

I just called him and he said the team will email you the results today but can't tell me directly due to hipaa.

Oohhhkay. So how would we handle an offer letter should they acknowledge my accommodation? If I get a denial will that impact my current accommodation?

I'm trying to figure all that out right now. I'm guessing it just has to be shared with you first before I can be notified.
I haven't encountered accommodation before so I'm learning as we go in all transparency.
It shouldn't impact your current accommodation as that has been approved via CBRE already.

I will send you a note when I receive it to confirm. Thank you for all your help, regardless how things move forward.

Monday, Apr 18 • 9:55 AM

Hi Bryan,
I hope you had a good weekend. I have not received any correspondence. I assume I should be looking for something from Taleo?

I'm guessing it comes from compliance rather than taleo. They said they sent you an email on Friday. They couldn't share with me the email due to hipaa though

I haven't received anything - would it go to my Gmail?

I'm guessing whatever email you used to submit the accommodation request.
You can email us .accommodations@nike.com to follow up. I wish I could access the results for you as that would make things a lot easier.

All right, I followed up with the email you recommended with my number

the email due to hipaa though

I haven't received anything - would it go to my Gmail?

I'm guessing whatever email you used to submit the accommodation request.
You can email us .accommodations@nike.com to follow up. I wish I could access the results for you as that would make things a lot easier.

All right, I followed up with the email you recommended with my number and hopefully will hear something. Should I make any extrapolations in absence of offer letter?

Sorry to miss, I can call you back in about fifteen if that works?

I'm the person that triggers the offer letter but I can't do that until I have word back. I think part of it is you telling them they can share the decision but again, this is the first time I'm working through this. I wish I knew more to help!

Tuesday, Apr 19 • 10:02 AM

just getting off a zoom, will call you right back

Wednesday, Apr 20 • 4:29 PM

Hello sir, just a heads up I shared my conundrum with Jenny and she is aware of everything. I'd like to begin the next phase with compliance. Do I just respond to the same email address as I recieved the denial of religious accommodation notice with my addenda?

Friday, May 6 • 2:55 PM

Hello! My request has been resubmitted. Thank you!

Friday, May 6 • 4:49 PM

Sounds good. I will ping the team. Have a good weekend!

Thank you, you too!

Thursday, May 12 • 11:02 AM

Hello! I hope that you are staying dry out there. Just checking in before Friday. I haven't heard anything further. Thank you!

Monday, May 16 • 10:12 AM



Have a good weekend!

Thank you, you too!

Thursday, May 12 • 11:02 AM

Hello! I hope that you are staying dry out there. Just checking in before Friday. I haven't heard anything further. Thank you!

Monday, May 16 • 10:12 AM

Hi Bryan sorry to bug you but wanted to check in and learn if you would hear anything back from compliance or if I'm just supposed to be on the lookout for a smart sheet notification such as last time?

Hey! Never a bother. I've emailed them asking for an idea of when they will make a decision but haven't heard back yet. I assume they will communicate to you and rely on you to share the results with me

Thanks, I will let you know if I see anything, of course.

Monday, May 23 • 11:51 AM

Hi Bryan. I'm under the impression that Nike has recinded their offer. Thank you for your help on this endeavor and perhaps our paths will cross again in the future. Thank you!

Well that's frustrating. Let's stay connected. I'll always be your advocate and happy to do what I can to help you.

Thank you.

May 23, 12:16 PM • SMS

Text message

# EXHIBIT "F"

 Gmail

Danika Duren Goldstein <danikaduren@gmail.com>

## Confirmation - Candidate COVID-19 Vaccination Accommodation Request
1 message

**Smartsheet Forms** <forms@smartsheetmail.nike.com>                                    Fri, May 6, 2022 at 2:54 PM
To: danikaduren@gmail.com

   # NIKE, Inc. Human Resources

Thank you for submitting your entry. A copy is included below for your records.

Please allow 7-10 business days for an HR Agent to contact you regarding your accommodation request.

## Candidate COVID-19 Vaccination Accommodation Request

| | |
|---|---|
| **First Name** | Danika |
| **Last Name** | Goldstein |
| **Email Address:** | danikaduren@gmail.com |
| **Home Street Address** | 7738 SW 51st Ave |
| **City** | Portland |
| **State** | OR |
| **Zipcode** | 97219 |
| **Phone Number** | +1 (971) 570-9800 |
| **Taleo Candidate Number** | 10158222 |
| **Work State** | Oregon |
| **What is the reason for your accommodation request?** | Religious Accommodation - Vaccine |
| **Please identify the name of your religion (if any):** | Judaism |
| **Please describe your religious belief, practice or observance and how it conflicts with being vaccinated against COVID-19:** | I am requesting religious accommodation from the currently available covid-19 products, which violate my relationship with G-d, conflict with Avodat HaShem, and would be disobedient to the word of G-d within my spiritual practice which is informed and guided by Jewish principals, concepts and scriptures.<br><br>My practice and my relationship with G-d is a fundamental part of my core being. Faith in G-d and living actions in devotion and acknowledgement to G-d prevents me from injecting my body with the currently available covid products as that would violate instruction from G-d and my religion based on the formulation of the vaccine. The Torah tells us to guard ourselves against harm (Dvarim 5:9 or Deuteronomy 5:9) which is the fundamental basis of my accommodation request, and additionally substantiated by spiritual guidance from the story of Gedaliah and wisdom from Sefer HaChinuch. Maimonides (Rambam/Rabbi Moses ben Maimon) provides detailed instruction on the rules for maintenance of our bodies and minds, including rules for sleep, prayer, sex, food and drink in the Mishneh Torah Human Dispositions 3 and 4 that inform my religious observation and reinforce my religious conflict with being vaccinated against Covid -19 by the currently available products.<br><br>My faith provides structure and dictates attendance to rules and responsibilities of acting within accordance to G-d's edicts. There are dictates from G-d that prevent my accepting injection of the covid vaccine as I have been |

Case 3:24-cv-00250-AN    Document 1    Filed 02/06/24    Page 36 of 46

instructed to defer such medical treatment within accordance of faith that G-d will love and protect me and keep me from harm. There are innumerable examples of how this plays out in my practical and daily observance, such as keeping Kashrut: observance of the dietary laws dictating what I put in my body and maintain my health, as dictated by G-d. My faith of course extends beyond the topic of covid, and into the celebration of Holy days such as the Jewish High Holidays, observance of Shabbat, maintaining Kosher dietary laws, educating my son at an Orthodox Jewish school and teaching him Hebrew, engaging in the practice of bris in bringing my son into the Jewish community among countless other examples of religious practice and observance.

**When did you first begin to embrace the religious belief, practice or observance identified above (mm/dd/yyyy)**

02/28/1982

**Have you ever been immunized or vaccinated against any disease, virus, etc., including but not limited to the Flu, Hepatitis A, Hepatitis B, Human Papillomavirus (HPV), Measles, Mumps, Rubella, Shingles, or Varicella?**

Yes

**If yes, please describe why your religious belief, practice or observance conflicts with being vaccinated against COVID-19, but did not conflict with receiving other immunizations or vaccines.**

I am not objecting to vaccines overall, but am objecting to the requirement of the current covid-19 products as they lack the longevity of research of other vaccines, and that there are known hazards that must be weighed. For instance, there is concern within the conservative Jewish community specific to reproductive health risks and I fear the eternal consequences of defying G-d and safeguarding my body as communicated within the Torah and halachic law to protect life. This is but one example as fits with the table of practice with other concerns as relates to the covid vaccine. I have already had the covid virus at least twice and G-d has restored my health, Baruch HaShem.

**Does the religious belief, practice or observe identified above allow you to comply with other COVID-19 safety protocols, including social distancing, wearing a face covering, and being tested for COVID-19?**

Yes

**I further certify that above information to be true and accurate and I sincerely hold the religious belief, practice or observance described above.**

**I also understand that falsification of this document and misrepresentation of my religious belief, practice or observance may be considered a violation of NIKE policy, including its Conduct Standards, and result in corrective action, up to and including termination of employment.** 

## File Attachments

 **Nike Religious Accommodation Request.pdf**  (100k)

Powered by Smartsheet Forms
© 2022 Smartsheet Inc. | Contact | Privacy Policy | User Agreement | Report Abuse/Spam

# EXHIBIT "G"

# Denial of 2nd Religious Accommodation Request (COVID-19 Vaccination Policy)

 Inbox ×

**USAccommodations** <US.Accommodations@nike.com>     Tue, May 17, 2022, 1:55 PM

to me

Dear Danika,

Nike, Inc. has reviewed your second request for an exception to our COVID-19 Vaccination Policy as an accommodation of your religious belief. The information provided by you did not establish you hold a religious belief, practice or observance that would prevent you from complying with the Policy's requirement to be fully vaccinated against COVID-19. For this reason we are denying your request for religious accommodation. I want to assure you that the information you submitted was considered carefully and we did not make this decision lightly. This ends the review process for this request.

<u>What Happens Now</u>?

We ask you to comply with the COVID-19 Vaccination Policy in a timely manner by doing one of the following:

- Before 5:00 PM PT on May 19, 2022, you must document your receipt of a first shot of an approved COVID-19 vaccine and provide a copy/image your vaccination card to <u>US.Accommodation@nike.com</u>. If you select this option, you must also enter your second shot (if applicable) by June 20, 2022.

If you do not take any of the above steps by May 19, 2022, your offer will be rescinded. Failure to timely enter your second shot (if applicable) will also res in termination, with an effective date to be identified by NIKE in its sole discretion.

For any additional questions, please contact NIKE Accommodations at <u>US.Accommodations@nike.com</u>.

Sincerely,

NIKE HR

# EXHIBIT "H"

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Seattle Field Office**
909 First Avenue, Suite 400
Seattle, WA 98104
(206) 576-3000
Website: www.eeoc.gov

## <u>DETERMINATION AND NOTICE OF RIGHTS</u>
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 12/05/2023

**To:** Mrs. Danika N. Goldstein
7738 SW 51st Ave SW 51st Ave
Portland, OR 97219
Charge No: 551-2023-01776

EEOC Representative and email:    Bryne Moore
Investigator
bryne.moore@eeoc.gov

---

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 551-2023-01776.

On Behalf of the Commission:

December 5, 2023
Date

_____ For
Elizabeth Cannon
Director

Cc:

**Nike, Inc.**
Alyson.Smith@nike.com

Ray Hacke

Rhacke@pji.org

Please retain this notice for your records.

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC
*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request

identifying your request as a "FOIA Request" for Charge Number 551-2023-01776 to the District Director at Nancy Sienko, 450 Golden Gate Avenue 5 West PO Box 36025

San Francisco, CA 94102.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 551-2023-01776 to the District Director at Nancy Sienko, 450 Golden Gate Avenue 5 West PO Box 36025

San Francisco, CA 94102.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

# EXHIBIT "I"

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

Count Days     Add Days     Workdays     Add Workdays     Weekday     Week №

From **Thursday, December 5, 2024**
Added 90 days

## Result: Wednesday, March 5, 2025

### Calendar showing period from December 5, 2024 to March 5, 2025

| December 2024 |
| --- |
| 26 days added |

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| --- | --- | --- | --- | --- | --- | --- |
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

| January 2025 |
| --- |
| 31 days added |

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| --- | --- | --- | --- | --- | --- | --- |
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

| February 2025 |
| --- |
| 28 days added |

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | |

| March 2025 |
| --- |
| 5 days added |

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

☐ = Start date (Dec 5, 2024)    ☐ = Final result date (Mar 5, 2025)



**Time & Date Calculator App for iOS**

See how long remains before a deadline or exactly when those 30 days are up.